THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CHARLES ALBERO and Another, Appellants.*

First Department, April 27, 1928.

Crimes — robbery, first degree — defendants charged with robbing clothes shop — eye witnesses to crime could not identify either defendant — subsequent possession of stolen property not sufficient to warrant conviction.

The defendants were indicted for the crime of robbery in the first degree, based on the alleged robbery of a clothes shop, a well-lighted room, on the evening of February 19, 1927. The robbery was committed by four men. Three eye witnesses to the robbery could not identify either of the defendants as two of the robbers. The evidence tended to show that on the evening after the robbery the defendants were arrested while in the act of wrapping up some suits of clothes, in an apartment in which they did not reside, and that the suits of clothes found in that apartment were a part of the stolen goods. The defendants denied any connection with the robbery and stated that they were present in the apartment for the purpose of purchasing suits of clothing, they having been told that suits were for sale at that place. The defendants resisted arrest and made contradictory statements in support of their alibis.

While the evidence on the part of the prosecution tends to show that the defendants had guilty knowledge that the clothes had been stolen, it does not, in the absence of corroborative evidence, especially in view of the fact that the eye witnesses to the robbery could not identify the defendants, justify a conviction of the crime of robbery in the first degree, and; therefore, the judgment of conviction is reversed.

MARTIN and FINCH, JJ., dissent, with opinion.

APPEAL by the defendants from a judgment of the County Court of the county of Bronx, rendered on the 28th day of April, 1927, convicting them of the crime of robbery in the first degree.

*Martin W. Littleton* of counsel [*Myles A. Walsh* with him on the brief], for the appellants.

*George B. DeLuca* of counsel [*Herman J. Fliederblum* and *Albert H. Henderson* with him on the brief; *John E. McGeehan, District Attorney*], for the respondent.

O'MALLEY, J. On the evening of February 19, 1927, a robbery of a clothes shop located in Bronx county was committed by four men. Three of five eye witnesses who were present were called by the People, but no one of them was able to identify either of

* Appeal dismissed, 248 N. Y. 599.

the two defendants or their codefendant, one Scarglato, who was acquitted by direction at the close of the People's case. The trial against the appellants proceeded upon the count of robbery in the first degree, the counts of larceny, assault and receiving stolen property having been withdrawn.

The conviction of the appellants rests upon the presumption arising from an alleged exclusive and conscious possession of some of the proceeds of the robbery immediately after its occurrence. Only a part of the clothing stolen is claimed to have been found in their possession. Some articles of jewelry, consisting of stickpins and a watch and chain, taken from some of the victims, were not so found.

The arrest was made about twenty-four hours after the robbery occurred. The defendants were apprehended while in the act of wrapping up some of the suits of clothes in a ground floor apartment at No. 343 East One Hundred and Seventeenth street. While they were alone in the apartment at the time, there was no proof that they leased or controlled it or that they resided there. On the other hand, they testified that they resided elsewhere and it was fairly inferable from the evidence that the apartment was occupied and controlled by others. The defendants at all times denied knowledge of or participation in the robbery and told the arresting officers that they came to look at the suits of clothing for the purpose of making a purchase, having been told that there were suits there for sale. They claim to have been in the act of examining some of the suits when the officers entered.

We may concede that the jury were warranted in believing that the defendants were found in the act of wrapping up the suits of clothes, rather than in the act of examining them for the purpose of making purchases. We may also concede that their strong resistance to arrest and their contradictory statements in support of their alibis, were indicative of guilty knowledge. But the defendants have not been convicted of criminally receiving stolen property, knowing it to have been stolen. They stand convicted of a robbery which is claimed to have taken place in the presence of five witnesses, no one of whom has identified either defendant as a participant therein; and this, notwithstanding that the crime took place in a well-lighted room and under circumstances which gave to the witnesses opportunity to observe closely the faces, build and manner of dress of the criminals. Common experience teaches that witnesses to crimes of this character do not so easily forget the faces of those who rob them at the point of a gun. In these circumstances we think that any inference of guilt of the robbery which arose from possession of some of its

proceeds was repelled and overcome, and that the verdict convicting the appellants was against the weight of the evidence. (*People* v. *Galbo*, 218 N. Y. 283, 290.)

It follows that the judgment of conviction should be reversed and a new trial granted.

DOWLING, P. J., and McAVOY, J., concur; FINCH and MARTIN, JJ., dissent.

MARTIN, J. (dissenting). On February 19, 1927, at about nine P. M., a robbery was committed by four men at the Hunts Point Clothes Shop, located at 1009 East One Hundred and Sixty-third street, county of Bronx. A quantity of men's clothing, jewelry and cash was stolen. The following day, February 20, 1927, at nine-five P. M., approximately twenty-four hours after the robbery had been committed, the defendants Albero and Permuto were found by the police in the sole and exclusive possession of a portion of the stolen property in a flat at No. 343 East One Hundred and Seventeenth street.

In statements made to the district attorney they attempted to explain their whereabouts on the night of the robbery, which statements were false. At the trial, as a defense, they offered testimony to prove an alibi which was false, and attempted to make explanations of their possession of the stolen property, which likewise were false. In addition there are other facts and circumstances which support the conclusion reached by the jury that these defendants were among the four men who committed the robbery.

They were tried jointly with a third defendant, one Scarglato, as to whom the indictment was dismissed at the close of the People's case. The defendant Albero did not take the stand at the trial. The jury properly convicted both defendants Albero and Permuto of robbery in the first degree, as charged.

At the time of the robbery one Murray Klewan, an employee of Schuback, was in charge of the clothing store; there was a customer in the dressing room putting on a pair of trousers, a part of a suit he had previously purchased, when two men walked in. One of the men passed Klewan and said, " I want to see an overcoat," and the other man passed and said, " I want to see a suit." One of the men then pulled a pistol and pointed it at Klewan. The other man went to the dressing room and compelled the customer to come out and placed him against the wall with Klewan. The second man also had a gun. Another salesman named Henry Solgannin and two tailors were compelled to go into the office and remain there. One of the tailors, George Simonian, was asked to open the cash register but was unable to do so. Klewan opened

it. Klewan was then compelled to open the safe, but nothing was found except a box containing a card system.

Mr. Schuback, the proprietor of the shop, identified the garments not only by the labels, but he knew the goods also and the manufacturer by whom they were made. The robbery took place on Saturday, February nineteenth, and he saw the articles in the station house on Monday or Tuesday of the following week.

The witness George Simonian, a tailor in the employ of the Hunts Point Clothes Shop, testified as to what happened in the store the evening of the robbery. He could not say at the trial that the defendants were the men who robbed him on the night in question. While he could not identify Scarglato, the third defendant, he stated that the one who robbed him was about as tall as this defendant.

Dave Brand testified that at about nine P. M. on February 19, 1927, he entered the Hunts Point Clothes Shop and was ordered into the office by one of the robbers at the point of a gun. He only got a glimpse at the profile of one of the robbers. Just before the robbers left and ran out he heard one of them at the door call out " O. K. out." At one time he thought that the defendant Scarglato was one of the robbers, but he was not positive. On February twenty-first he saw the three defendants in the district attorney's office, and on March first testified before the grand jury. On the trial he was not positive that any of the defendants was engaged in the holdup.

The police officers who arrested the defendants testified in detail as to the circumstances surrounding the arrest, the finding of the stolen property in the possession of the defendants, and the inability of the defendants to explain how it came into their possession.

The defendants produced several witnesses in an effort to prove an alibi, but these witnesses contradicted each other and their testimony was shown to be false by the statements made by the defendants to the district attorney shortly after their arrest.

The evidence discloses that when the detectives broke into the flat at No. 343 East One Hundred and Seventeenth street, both the defendants resisted arrest and attempted to draw their revolvers. The detectives were obliged to overcome their resistance by the use of force. During the struggle with the police the defendant Permuto attempted to reach a baby carriage which was in a room adjoining the kitchen. It was later discovered that in this baby carriage there were two more revolvers fully loaded and a supply of cartridges.

Joseph J. McMahon, called as a witness on behalf of the People, testified that he is a stenographer in the office of the district attorney,

county of Bronx; that he was present on February 21, 1927, when the district attorney questioned the defendant Albero; that he took stenographic minutes of the questions which were asked by the district attorney and of the answers which were given by Albero.

It is not claimed that the statements to the district attorney were the result of force, intimidation or duress; they are admitted to have been voluntary statements.

Albero stated that he had not worked in any legitimate business for a couple of years. He knew Permuto for a couple of years and first met him in a cafe at 306 East One Hundred and Eighth street. Prior to the Sunday night after the robbery he said he had not seen Permuto for a year. He last saw him on Sunday night at One Hundred and Eighth street and asked him if he wanted to buy a suit. One " Clutch," whom he knew, asked him if he wanted to buy some clothes. He did not receive a key to the apartment from " Clutch." The door was open. " Clutch " was there and then went out. Albero stated that since the trouble his brother had, he had been stopping with Salvatore Naclario at 233 East One Hundred and Sixth street. He said he was at his own home on Saturday, on Cypress avenue. On the Friday before the holdup he did not get up until the afternoon, having played cards all night. He then went to Naclario's house and remained there all of Friday night. He got up about one-thirty Saturday afternoon and remained at Naclario's house all of Saturday. *He stayed there all Saturday night and went to bed about three o'clock in the morning. He said he did not wear glasses but admitted that certain glasses which were shown to him were his.* He said he had a sty, but that the glasses were not recommended by a doctor. He said he did not know how the police obtained these glasses, but they were his.

On Sunday he got up at eleven o'clock in the morning and remained in Naclario's house until five o'clock. He was on his way back to his mother's house when he met " Clutch," who asked him if he wanted a couple of suits. " Clutch " brought him over to the apartment. Albero then came back and brought Permuto up to his house. He was in the apartment an hour before the police came in. Permuto was there with him. " Clutch " introduced Permuto to him. This is a three-room apartment. Before the arrival of the police he and Permuto were talking about sizes. The door was not open when the police got there. He said he lived on Cypress avenue and One Hundred and Thirty-second street for a couple of months.

The witness McMahon further testified that he was present in the district attorney's office when the defendant Permuto was being questioned and took stenographic notes of the questions

which were asked Permuto and the answers that were made by him. McMahon testified that Permuto said he was arrested in a rear apartment on the ground floor of premises 343 East One Hundred and Seventeenth street. *He did not know who lived in the apartment and had never been there before.* He went there as a result of meeting Albero, whom he referred to as " Charlie." Albero met him on One Hundred and Eighth street on Sunday night shortly after seven o'clock. He had had no appointment to meet him. Albero asked him if he wanted to buy a suit. He then accompanied Albero. He did not ask Albero where he had gotten the suits. He did not know where he was going. He denied that he had a gun with him that night and said that he did not know whether Albero had one. He and Albero got to this apartment before eight o'clock at night. The door was open. They walked in and looked at the suits. *Nobody was in the apartment when they arrived there.* They were there about five minutes when someone knocked on the door and the police officers came in. When he and Albero reached the apartment Albero said nothing but just showed him the suits. The suits were on racks. Albero asked him if he liked the suits. *He asked Albero whose apartment it was, and Albero said he did not know.* The officers then came in. When asked how long he knew the defendant Albero, he said this was the second time he had met him, the first time being a year ago. He stated that some of the suits were in the rear room and some were in the kitchen. *Those in the kitchen were on the floor and he was picking them out to see if they would fit him.* He said he was an assistant conductor on the New York Central until May, 1926. Since then he has been doing painting for a janitor named Rossi. He worked about two days a week for him. The last time that he did such work was about a month previous. At that time he was painting his aunt's apartment.

*On the Friday night before the holdup he had been playing cards. He reached home about eight o'clock. He had been playing cards that night with a man whose second name he was not sure of but knew him by the name of Joe. This man lives in the same house in which he, Permuto, resides.*

On Friday night he went to bed at one o'clock and got up at nine o'clock the next morning. There were four or five other men, besides Joe, with whom he had been playing cards that Friday night. He did not know the other men. *On Saturday morning he went to a bath at One Hundred and Ninth street and Second avenue. He met nobody there whom he knew. He then went home. At about six or six-thirty he went to a cafe at 306 East One Hundred and Eighth street* owned by a woman named Rossi. *He there met a lot of boys*

*whom he knew. He did not know where they lived. During all the time he was in this cafe he was playing cards. From there he went home.* His sister, he stated, had had a birthday party on Thursday or Friday. He could not remember whether it was Thursday, Friday or Saturday. Questioned further, he thought his sister's birthday was on Friday night, and said that he was not positive whether he played cards with his neighbors on Friday night as at first stated by him. *He admitted that he had stated that he was in a cafe from six to nine o'clock on Saturday night but did not seem to be able to remember whether his sister's birthday party was on Friday or Saturday.* On further questioning, he stated that he was not positive whether he was in the cafe on Saturday night, since he was not positive whether his sister's birthday was on Friday or Saturday. He said he slept home Saturday night, that he reached home about twelve or one o'clock, and that he had come from the second floor of the house in which he lives. *He had been playing cards on the second floor. He now stated that he was sure of that. He started playing cards at about eleven o'clock at night and stopped at about twelve or one o'clock. Prior to that he had been downstairs in his own home. He had gone upstairs to the other apartment at about ten o'clock at night. From seven to ten o'clock at night he was out.* After further questioning he stated that his mind was now clear about Saturday night, that the birthday party at his sister's took place on Friday night, that he did not go to the cafe Saturday night except for about an hour, at about eight-thirty. *He admitted, after several denials, that on the Friday night before the holdup he had been up to The Bronx, at the home of one Uzzi, and finally admitted that he met the defendant Albero there.* He admitted that he lied when he first denied being up to this house on Friday and when he denied that he met Albero there that night. He stated that he saw Albero on Friday night. Albero was with him. He saw Albero again Sunday night. He had also met Albero at Uzzi's home on Tuesday night. He admitted that he had not been telling the truth when he said that he had not seen Albero before the Sunday night when they were arrested.

Exclusive possession of recently stolen goods was proved beyond a question of doubt. Both defendants were found wrapping up the clothes into bundles. The witnesses for the People and the defendant Permuto say that no other persons were in the apartment. The excuse given for being in the apartment was that one of the defendants wanted to buy a suit of clothes, and it was proved on direct examination by his own attorney and on cross-examination of the district attorney that he did not have any money to buy clothes. When Permuto appreciated the effect of this testimony,

he afterwards said he had two or three dollars with which to buy the clothing. He said he was going to look over the clothes, and if they were satisfactory he was going to obtain more money.

Only one defendant took the witness stand. He was unable to tell whose apartment they were in when arrested, although the other defendant stated to the district attorney that this witness took him to this apartment. The defense of an alibi was shattered by contradictory statements and admissions of this witness, and statements and admissions by both defendants to the district attorney the day after their arrest. The false alibi, as well as the statements made by the prisoner to the district attorney, added to the fact that they were caught wrapping up the goods, proved the guilt of the defendants.

The witnesses who were to identify defendants, either through fear or for some other reason, refused to identify any of the defendants on the witness stand. It is clear that one witness had before that date positively identified one of the defendants, but because of failure to identify him at the trial it was necessary to dismiss the indictment as to that defendant.

The law applicable to the facts in this case has been long established and has been frequently applied. Recent and exclusive possession of the fruits of a crime, *if unexplained or falsely explained*, will justify the inference that the possessor is the criminal.

In *People* v. *Galbo* (218 N. Y. 283, 290) the court restated the rule and said: " It is the law that recent and exclusive possession of the fruits of crime, if unexplained or falsely explained, will justify the inference that the possessor is the criminal. That rule has most frequently been applied in cases of burglary (*Knickerbocker* v. *People*, 43 N. Y. 177) and larceny (*Stover* v. *People*, 56 N. Y. 315) and receiving stolen goods (*Goldstein* v. *People*, 82 N. Y. 231); but it is not unknown in cases of murder (*People* v. *Jackson*, 182 N. Y. 66, 78; *Wilson* v. *U. S.*, 162 U. S. 613, 619; *Williams* v. *Comm.*, 29 Pa. St. 102, 106). The highwayman kills his victim; the purpose of the murder is robbery; the same inference that identifies the robber identifies the murderer. Possession of the dead body — the subject of the crime itself — has much the same significance as possession of jewels or money or other fruits of crime."

In *Knickerbocker* v. *People* (43 N. Y. 177) the court had the following to say: " The larceny in the last case may have occurred after daylight as appears by the report. On the other hand, the rule is uniformly laid down in the elementary writers who discuss the subject, many of whom have been already referred to, that the recent possession of the fruits of crime is evidence of the crime itself,

29

as of robbery, burglary. Thus, ' the possession of stolen goods recently after the loss of them, may be indicative, not merely of the offence of larceny, but of any other more aggravated crime which has been connected with theft.' (Wills on Cr'l. Ev., p. 61, 4th ed.)

" It seems almost impossible to escape the conclusion, that if possession be evidence of the larceny, it is also evidence of the burglary. Mere possession of another's property proves nothing, until it is shown how it was taken. If the taking were a mere trespass, it is impossible to make the possession evidence of anything more or less than the trespass. If a larceny, then it is evidence of the larceny. Here it is entirely clear that the only taking proved, was a burglarious taking, a burglarious larceny, and no other. The recent possession thereafter of the property thus taken, is evidence that the possessor burglariously took it; is evidence of that crime, as no other crime, except a burglarious larceny is proved. It proves that crime, or it proves nothing. Upon such proof you might as well say that it proved a trespass simply, as to say it proved only a larceny. The answer to each is, that no such offence is proved. The only offence proved being a burglarious larceny — a burglarious taking — recent possession thereafter proves the prisoner guilty of that offence if it prove any taking; as no other offence or taking is proved. Strike out the proof of the burglary in this case, and the prisoner is proved guilty of no crime. Insert it, and possession proves him guilty of that crime, if of any.

" In the language of LITTLEDALE, J., in *Rex* v. *Smith* (1 Ry. & Mood. 295) proof of ' possession of stolen property, soon after a robbery, refers to the original taking with all its circumstances.' (See *Comm'th.* v. *Millard,* 1 Mass. 6; *R.* v. *Exall,* 4 Fost. & Fin. Nisi Pri. R. 922). POLLOCK, Ch. B., charged the jury in this case, ' that property recently stolen, found in the possession of a person, is always presumptive evidence against that person, unless the possession can be accounted for and explained. The principle is this: that if a person is found in possession of property recently stolen, and of which he can give no reasonable account, a jury are justified in coming to the conclusion that he committed the robbery; and so it is of any crime to which the robbery was incident, or with which it was connected, as burglary,' etc."

In the same case (at pp. 179 and 180) the court said: " We think it well settled law, that the exclusive possession of the whole or some part of stolen property by the prisoner, recently after the theft, is sufficient when standing alone to cast upon him the burden of explaining how he came by it or of giving some explanation; and if he fail to do so, to warrant the jury in convicting him of the larceny."

In *Linsday* v. *People* (63 N. Y. 143), in discussing the presumption that flows from possession of the stolen property, the court stated: "Proof and a description of the watches carried shortly before the murder, by the deceased, followed by evidence that one of the watches was in the possession of the prisoner a few months thereafter, and seen only on a single occasion, was proper. Possession of the fruits of a robbery or of the goods of a murdered man soon after the perpetration of the crime, is, unexplained, very persuasive evidence of the guilt of the one so found in the possession of the goods."

The jury was the sole judge of the facts and inferences that should be drawn from the testimony. They had an opportunity to see the witnesses and see and hear one defendant on the witness stand, the other defendant having failed to take the stand.

The jury's verdict was proper and should be upheld by an affirmance of the judgment.

FINCH, J., concurs.

Judgment reversed and a new trial ordered.